

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Pedro R. Lopez ) | |
| Individually And On Behalf Of ) | |
| All Others Similarly Situated, ) | |
| 765 Linden Ave.  Elizabeth, ) | |
| NJ 07202 ) | |
| ) | |
| Plaintiff ) | Civil Action No.:_____ |
| ) | |
| Vs. ) | COMPLAINT |
| ) | |
| CHRISTIANA TRUST ; A DIVISION ) | (Fair Debt Collections Practice Act,15 U.S.C. §§ 1692 *et seq* ,) |
| OF WILMINGTON  SAVING FUNDS ) | " 15 U.S.C. § 1692e" |
| SOCIETY, FSB, AS TRUSTEE FOR ) | "15 U.S.C. § 1692a(6)" |
| STANWICH MORTGAGE LOANS TRUST, ) | " 15 U.S.C. § 1692g " |
| SERIES 2013-1 ) | " 15 U.S.C. § 1692a(6)(B) |
| ) | " 15 U.S.C. § 1692a(5)" |
| ) | (New Jersey Consumer Fraud Act, **N.J.S.A. 56:8-1, et seq.**) |
| and ) | (New Jersey's Unfair Trade and Consumer Protection Laws,) |
| ) | (**N.J. Stat. § 56:8-10** and **N.J. Stat. § 56:8-2** seq.) |
| PHELAN HALLINAN & SCHMIEG ) | |
| 400 Fellowship Road, Suite 100 ) | |
| Mt. Laurel, NJ 08054 ) | |
| ) | |
| and ) | |
| ) | |
| Udren Law Offices P.C. ) | |
| 111 Woodcrest Rd, Suite 200 ) | |
| Cherry Hill, NJ 08003 ) | |
| Defendants ) | (Not Subject to Mandatory Arbitration) |
| ) | |
| ) | Jury Trial Requested |

# **COMPLAINT**

Plaintiff, Pedro R. Lopez, says by way of Complaint against Defendants, **Udren Law Offices P.C.,  PHELAN HALLINAN & SCHMIEG** and **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** as follows:

## COMPLAINT IN CIVIL ACTION

### *I. INTRODUCTION:*

1. Plaintiff brings this civil action on behalf of himself as described below:

2. Defendants have uniformly engaged in a scheme of illegal and deceptive business practices that violate both federal and state law in attempting to collect a debt regarding a mortgage by filling a foreclosure civil action against Plaintiff, Pedro R. Lopez by using false information and documentation and without proper documentation sufficient to establish and substantiate the cause(s) of action attempted to be the bases for the respective collection actions and the categories of charges attempted to be imposed upon the Plaintiff.

3. This scheme is carried out by Defendants by means of centrally controlled sets of policies, practices and the like and is conspiratorially implemented by and among other entities and persons (co-conspirators) with form documents, form notices, and form complaints against alleged debtors. Defendants knowingly used false documentation and without information necessary to justify the cause(s) of action being asserted.

4. The scheme is carried out knowingly using false and inapplicable documentation systematically provided by Defendants attempting to foist upon the victims the imprimatur of substantiating documentary evidence.

5. Defendants routinely and conspiratorially participate and engage in the initiation and perpetuation of attempts to collect debt from and against persons the documentation for which is knowingly false, non-existent, or otherwise not available to substantiate the cause(s) of action asserted in attempting to collect alleged debt obligations, and the categories sought to be collected under Court Docket No.: F-034946-14 from the Superior Court of  New Jersey Chancery Division.

6. Defendant, **Udren Law Offices P.C.** ("Law Firm")(hereinafter referred as "LAW FIRM "), to justify the collection action referred to them by CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1, by filing law suits, continuing and perpetuating the law suits without proper documentation, knowingly attaching incorrect, false, or otherwise irrelevant documentation as exhibits to their complaints and/or as evidence for trial with the belief that I the consumer will not further question or investigate the efficacy of the complaint,

exhibits, and other evidentiary documentation, and submit to payment of whatever allocated debt and to fully justify that the Plaintiff, CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1 has legal (**"STANDING"**) to commence the civil action foreclosure proceedings.

7. In the case of the individual Plaintiff, LAW FIRM, for and on behalf of defendant, , **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1 (hereinafter referred to as "CHRISTIANA TRUST ") filed a Complaint with an attached affidavit by** an agent/Attorney from **UDREN LAW OFFICES, P.C.,,** stating that they fiscally communicate with an agent of **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1. See Exhibit "A", a true and correct copy of the Complaint filed with an attached affidavit by** an agent/Attorney from **UDREN LAW OFFICES, P.C.,** stating that they fiscally communicate with an agent of **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1, file in the underlying action.**

8. The Complaint in the underlying action references to both "Pedro R. Lopez and Piedad Lopez", directly indirectly, as follows:

a. Paragraph 1 references **"terms"**, pertaining to mortgage loan agreement ,executed by Pedro R. Lopez and Piedad Lopez on April 04, 2008 to American Partners Bank a Note to secure the sum of $426,629.00 with interest thereon at 6.00000% per annum, on the unpaid balance, said principal and interest to be paid in monthly installments commencing on 06/01/2008 and the same day of each month thereafter until the principal and interest are paid in full, except that the final payment of the principal and interest, if not paid sooner, shall be due and payable on 05/01/2038.

b. Paragraph 1 references "terms and conditions pertaining to mortgage loan agreement, executed by Pedro R. Lopez and Piedad Lopez on April 04, 2008 to American Partners Bank a Note to secure the sum of $426,629.00 with interest thereon at 6.00000% per annum, on the unpaid balance, said principal and interest to be paid in monthly installments commencing on 06/01/2008 and the same day of each month thereafter until the principal and interest are paid in full, except that the final payment of the principal and interest, if not paid sooner, shall be due and payable on 05/01/2038.

c. There is no special endorsement in blank attached to **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** court complaint, nor is their any attached chain of Assignments, Assignment of the Mortgage and Assignment of the original Note from American Partners Bank with an special endorsement in blank to the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1,** showing a complete chain of assignments

that will legally justify that the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** did in fact have standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying **note** at the time their foreclosure action was commenced and filed on August 22, 2014 at 10:56:46 am.

When a mortgage is represented by a bond or other instrument, an **assignment** of the mortgage without **assignment** of the underlying **note** or bond is a nullity. (*see Merritt v Bartholick*, 36 NY 44, 45 [1867]; *Kluge v Fugazy*, 145 AD2d 537, 538 [1988]

### Aurora Loan Servs. v. Weisblum

85 AD 3d 95, 923 NYS 2d 609 - NY: Appellate Div., 2nd Dept., 2011... The plaintiff's failure to **show** strict compliance requires dismissal. ... In order to commence a foreclosure action, the plaintiff **must** have a legal or equitable interest in the ... by **delivery** without a written assignment," the affiant failed to give any factual detail of a **physical delivery** of both ...

## OPINION OF THE COURT

ANGIOLILLO, J.

In *First Natl. Bank of Chicago v Silver* (73 AD3d 162 [2010]) (hereinafter *Silver*), we held that the plaintiff in a foreclosure action has the burden of demonstrating compliance with Real Property Actions and Proceedings Law § 1303, a notice requirement of the Home Equity Theft Prevention Act (*see* Real Property Law § 265-a [hereinafter HETPA]). Proper service of RPAPL 1303 notice with the summons and complaint is a condition precedent to the commencement of the action, and noncompliance results in dismissal of the complaint.

## Standing

In order to commence a foreclosure action, the plaintiff **must** have a legal or equitable interest in the mortgage (*see Wells Fargo Bank, N.A. v Marchione,* 69 AD3d 204, 207 [2009]). A plaintiff has standing where it is both (1) the holder or assignee of the subject mortgage and (2) the holder or assignee of the underlying **note**, either by **physical delivery** or execution of a written assignment prior to the commencement of the action with the filing of the complaint (*see Wells Fargo Bank, N.A. v Marchione,* 69 AD3d at 207-209; *U.S. Bank, N.A. v Collymore,* 68 AD3d 752, 754 [2009]). Thus, as long as the plaintiff can establish its lawful status as assignee, either by written assignment or **physical delivery**, prior to the filing of the complaint, the recording of a written assignment after the commencement of the action does not defeat standing (*see U.S. Bank, N.A. v Collymore,* 68 AD3d at 754).

While, in some circumstances, the assignment of a **note** may effect the transfer of the mortgage as an inseparable incident of the debt (*see U.S. Bank, N.A. v Collymore,* 68 AD3d at 754), here the assignment instruments purport to do the opposite, without any evidence that MERS initially physically possessed the **note** or had the authority from the lender to assign it (*see LPP Mtge. Ltd. v Sabine Props., LLC,* 2010 NY Slip Op 32367[U] [2010]; *OneWest Bank, F.S.B. v Drayton,* 29 Misc 3d 1021, 1038-1041 [2010]; *Bank of N.Y. v Alderazi,* 28 Misc 3d 376 [2010]; *cf. Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674, 674-675 [2007]).

9. It is clearly impossible for missing documentation, such as chain of Assignments, Assignment of the Mortgage and Assignment of the original Note from American Partners Bank with an special endorsement in blank to the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** for which is not attached to the initial court complaint filed on August 22, 2014 to show that the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** did in fact have standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying **note** at the time of their foreclosure action.

Which, in this case/ matter was not presently filed by either Defendants, the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1,** or **Udren Law Offices P.C..**

10. Yet, as this Complaint will substantiate, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** has committed to writing and has disseminated to its national collection attorney base its instruction and authorization to all of its collection attorneys throughout the United States of America to used, the false court complaints stating that they were physical holders of both the note and mortgage, Notice stating that the Notice of Intention to Foreclosure, was previously sent to party or parties in interest who are the subject of collection efforts.

11.The dated foreclosure court complaint from August 22, 2014 is clearly not the applicable operative agreement regarding mortgage obligation to the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**

12. Plaintiff, Pedro R. Lopez by way of personal investigation, is aware that **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** and its national attorney base requires the use of the inapplicable false court complaints stating that they were physical holders of both the note and mortgage, Notice in their court complaints stating that the Notice of Intention to Foreclosure, was previously sent to party or parties in interest by deliberate design and pursuant to a directive, more fully discussed below.

13. Plaintiff alleges that this practice constitutes violation of the Fair Debt Collection Practices Act, **15 U.S.C. §§ 1692** *et seq*, **("FDCPA").**

14. Plaintiff alleges that this practice constitutes violation of the New Jersey Consumer Fraud Act, **N.J.S.A. 56:8-1, et seq.**

15. Plaintiff alleges that this practice constitutes violation of New Jersey's Unfair Trade and Consumer Protection Laws **N.J. Stat. § 56:8-10** and **N.J. Stat. § 56:8-2** seq.

16. Plaintiff alleges that this practice constitutes violation of New Jersey's Fair Debt Collection s Practices Act **N.J. Stat. § 45:18-1**

16 - a. Plaintiff alleges that this practice constitutes violation of **N.J.R.Ct. 1:4-8(a) and Fed.R. Civ.P. 11**

## *LEGAL FACTOR STATED BY PLAINTIFF, PEDRO R. LOPEZ:*

### DEFENDANT'S ARE NOT REGISTERED AND BOND IN THE STATE OF NEW JERSEY TO COLLECT UPON DEBT

---

## New Jersey Statutes 45:18-1 Collection agencies to file bond

### Terms Used In New Jersey Statutes 45:18-1

- person: includes corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity or specifically restricted to one or some of the above enumerated synonyms and, when used to designate the owner of property which may be the subject of an offense, includes this State, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State. See New Jersey Statutes 1:1-2

- State: extends to and includes any State, territory or possession of the United States, the District of Columbia and the Canal Zone. See New Jersey Statutes 1:1-2

No person shall conduct a collection agency, collection bureau or collection office in this state, or engage therein in the business of collecting or receiving payment for others of any account, bill or other indebtedness, or engage therein in the business of soliciting the right to collect or receive payment for another of any account, bill or other indebtedness, or advertise for or solicit in print the right to collect or receive payment for another of any account, bill or other indebtedness, unless such person, or the person for whom he may be acting as agent has on file with the secretary of state sufficient bond as hereinafter specified.

## New Jersey Statutes 45:18-3 Execution and approval of bond; sureties

The bond mentioned in sections 45:18-1 and 45:18-2 of this Title shall be executed by the person filing the same to the State of New Jersey for the use of any party aggrieved with sufficient surety, to be furnished by any company or corporation authorized to transact such business in this State. The said bond shall be examined and approved by the Attorney-General and thereafter accepted and filed with the Secretary of State; provided, however, that cash may be accepted in lieu of sureties; and provided, further, that no such bond with individual sureties thereon may be approved, accepted or filed.

### Terms Used In New Jersey Statutes 45:18-3

**Corporation**: A legal entity owned by the holders of shares of stock that have been issued, and that can own, receive, and transfer property, and carry on business in its own name.

**Person**: includes corporations, companies, associations, societies, firms, partnerships and joint stock companies as well as individuals, unless restricted by the context to an individual as distinguished from a corporate entity or specifically restricted to one or some of the above enumerated synonyms and, when used to designate the owner of property which may be the subject of an offense, includes this State, the United States, any other State of the United States as defined infra and any foreign country or government lawfully owning or possessing property within this State. See New Jersey Statutes 1:1-2

**State:** extends to and includes any State, territory or possession of the United States, the District of Columbia and the Canal Zone. See New Jersey Statutes 1:1-2

## New Jersey Statutes 45:18-6. Exemptions

### Terms Used In New Jersey Statutes 45:18-6

**Attorney-at-law**: A person who is legally qualified and licensed to practice law, and to represent and act for clients in legal proceedings.

**National bank**: A bank that is subject to the supervision of the Comptroller of the Currency. The Office of the Comptroller of the Currency is a bureau of the U.S. Treasury Department. A national bank can be recognized because it must have "national" or "national association" in its name. Source: OCC

**State**: extends to and includes any State, territory or possession of the United States, the District of Columbia and the Canal Zone. See New Jersey Statutes 1:1-2

Plaintiff also seeks restitution for damages, including, but not limited to, costs incurred, by filing for collection action in the amount of $ 617,332.51 plus court cost and the amount of $ 500.00 for violation of both, the Fair Credit Reporting Act § 609 (a) (1) (a) (FCRA), the New Jersey Fair Debt Collection Practices Act §§ 45:18-1 Collection agencies to file bond, 45:18-3

**Please see (Exhibit F )** Execution and approval of bond ; sureties, 45:18-6 Exemption, 45:18-5 Penalties and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.(FDCPA). The FDCPA prohibits "debt collector[s]" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. A "debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, a creditor becomes

subject to the FDCPA if the creditor "in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). A creditor uses a name other than its own when it uses a name that implies that a third party is involved in collecting its debts, "pretends to be someone else" or "uses a pseudonym or alias." *Villarreal v. Snow,* 1996 WL 473386 at *3 (N.D.Ill. Aug.19, 1996). Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the "name under which it usually transacts business, or a commonly-used acronym," Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act, 53 Fed.Reg. 50097, 50107 (1988), or any name that it has used from the inception of the credit relation, *see Dickenson v. Townside T.V. & Appliance, Inc.,* 770 F.Supp. 1122, 1128 (S.D.W.Va.1990).

17. Plaintiff seeks in junctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not seek collection from consumers knowingly and intentionally using false documentation pretending to foreclosure proceedings.

18. Plaintiff seeks in junctive relief to prevent the continuation and recurrence of the challenged conduct, and to assure uniform standards by which Defendants will not attempt to bypass spoliation so that Defendants will provide proper documentation of an explanation as to why the proper, representative documentation is not available at the time their foreclosure action was commenced and filed. To fully justify **(1)** that the defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1,** show that it has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying **note** at the time the action is commenced (*see Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674 [2007] ; *Federal Natl. Mtge. Assn. v Youkelsone,* 303 AD2d 546, 546-547 [2003]; **(2)** Provide either a written **assignment** of the underlying **note** or the physical delivery of the **note** prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident (*see Weaver Hardware Co. v Solomovitz,* 235 NY 321 [1923]; *Payne v Wilson,* 74 NY 348, 354-355 [1878]; *LaSalle Bank Natl. Assn. v Ahearn,* 59 AD3d 911, 912 [2009]; *Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d at 674; *Flyer v Sullivan,* 284 App Div 697, 699 [1954]); **(3)** and that the defendant **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** did not violated the Fair **Foreclosure** Act (FFA), *N.J.S.A.* 2A:50-53 to -68, and the Truth in Lending Act (TILA), 15 *U.S.C.* §§ 1601 to 1667f in this foreclosure proceeding under Docket No.: F-034946-14.

19. Plaintiff also seeks restitution for damages, including, but not limited to, costs incurred, collections made, return of property that were seized under illegal and fraudulent foreclosure proceedings under Docket No.: F-034946-14, also vacating of judgments improperly achieved, statutory damages, reversal of sheriff sale, eviction judgment, punitive damages, attorney's fees and costs, and whatever other relief this Court may deem appropriate and Plaintiff also seeks relief in the exact amount that is officially owed due to different discrepancies regarding the amounts claimed by both Defendants.

## II. PARTIES

20. Plaintiff, Pedro R. Lopez, is an individual residing at 765 Linden Avenue, Elizabeth, NJ 07202, at the time that the initial court complaint was filed by **PHELAN HALLINAN & SCHMIEG** but now the Plaintiff, Pedro R. Lopez still resides at 765 Linden Avenue, Elizabeth, NJ 07202. Plaintiff has been sued by as discussed below.

21. Defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** (the **"Trustee"**), is a national mortgages loan holder, which its principal offices that is an individual person or member of a board given control or powers of administration of property in trust with a legal obligation to administer it solely for the purposes specified, in the State of New Jersey, at the address set forth in the caption hereto. **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** is a New Jersey based national mortgages loan holder, located at 1600 S. Douglass Ave. Street. 200A Anaheim, CA 92806.

22. Defendant, **PHELAN HALLINAN & SCHMIEG (the "PH&S")**, is an affiliate of the (MERS), "Mortgage Electronic Registration System"  with its principal office as set forth in the caption hereto. At all times relevant, **PHELAN HALLINAN & SCHMIEG (the "PH&S")** is a agent/Attorney/nominee for (MERS), "Mortgage Electronic Registration System" as a servicer, the **"PH&S"** is in the business of administering defaulted accounts of **AMERICAN PARTNERS BANK**, one of the operations thereof is believed to be initiating and perpetuating law suits against alleged debtors, the selection of attorneys for the purpose of filing law suits seeking collection of amounts purportedly owed. The attorney, **PHELAN HALLINAN & SCHMIEG** is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

22.-a Defendant, **Udren Law Offices P.C.**, (the "ULO P.C."), is an affiliate of the **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** with its principal office as set forth in the caption hereto. At all times relevant, **Udren Law Offices P.C.,** is a agent/Attorney for **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** as a servicer, the **"ULO P.C."** is in the business of administering defaulted accounts of **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**, one of the operations thereof is believed to be initiating and perpetuating law suits against alleged debtors, the selection of attorneys for the purpose of filing law suits seeking collection of amounts purportedly owed. The attorney, **Udren Law Offices P.C.,**  is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and are in pure violation of New Jersey Fair Debt Collector Practices Act 45: 18-1 – Collection agencies to file bond.

23. Defendants, Daniel G. Schmieg, Esq.("Schmieg"), is an attorney associated with the law firm of Defendant, **PHELAN HALLINAN & SCHMIEG** (the "PH&S"); Daniel G. Schmieg is the signatory as Assistant Secretary and Vice President to the assignment of mortgage dated 01/23/2009 and the person who signed the assignment of mortgage. Daniel G. Schmieg is acting as nominee for and on behalf of (MERS), "Mortgage Electronic Registration System" The address there for is as set forth in the caption. Daniel G. Schmieg, is an Attorney with **PHELAN HALLINAN & SCHMIEG** and a potential partner to the law firm and **such in pure violation of Plaintiff's rights under the Fair Foreclosure**

**Act, Truth Landing Act** are each and all "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6), and are in pure violation of New Jersey Fair Debt Collector Practices Act 45: 18-1 – Collection agencies to file bond.

23.-a Defendants, Nicole La Bletta, Esq. ID # 003232006 are an attorneys associated with the law firm of Defendant, **Udren Law Offices P.C.** (the "ULO P.C."); Nicole La Bletta, Esq. is the signatory as attorney to the Complaint and the person who signed the verification. Nicole La Bletta, Esq. is acting for and on behalf of the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**. The address therefor is as set forth in the caption. Nicole La Bletta, Esq., Attorney of , **Udren Law Offices P.C.** and **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** are each and all "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6), and are in pure violation of New Jersey Fair Debt Collector Practices Act 45: 18-1 – Collection agencies to file bond.

24. In fact, this matter is the second matter for which **Udren Law Offices P.C.** (the "ULO P.C.") have sued the Defendants, Pedro R. Lopez in an official attempt to collect upon a debt that is outstanding, by the undersigned on behalf of a client for the same scenario. **" See Exhibit "B",** a true and correct copies of New Jersey Title Insurance Company filed by Nicole La Bletta, Esq., of **Udren Law Offices P.C.** at Woodcrest Corporation Center 111Woodcrest Road suite 200, Cherry Hill, New Jersey 08003 regarding the initial foreclosure court complaint under Docket Number: F-034946-14 for which is missing a signed assignment of mortgage and a signed assignment of the note attached to justify that the Plaintiff **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** have standing to commence this foreclosure action.

## *Please refer to court cases listed below:*

### US BANK, NA v. Collymore

68 AD 3d 752, 890 NYS 2d 578 - NY: Appellate Div., 2nd Dept., 2009... Where a mortgage is represented by a bond or other instrument, an assignment of the mortgage without assignment of the underlying note or bond is a nullity (see Merritt v Bartholick, 36 NY 44, 45 [1867]; Kluge v Fugazy, 145 AD2d 537, 538 [1988])....

## *LEGAL ANALYSIS*

Where a mortgage is represented by a bond or other instrument, an assignment of the mortgage without assignment of the underlying note or bond is a nullity (see Merritt v Bartholick, 36 NY 44, 45 [1867 ; Kluge v Fugazy, 145 AD2d 537, 538 [1988 ). Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident (see Weaver Hardware Co. v Solomovitz, 235 NY 321 [1923]; Payne v Wilson, 74 NY 348, 354-355 [1878]; LaSalle Bank Natl. Assn. v Ahearn, 59 AD3d 911, 912 [2009]; Mortgage Elec. Registration Sys., Inc. v Coakley, 41 AD3d at 674; Flyer v Sullivan, 284 App Div 697, 699 [1954]).

## *"Plaintiff Lacks Standing as Assignees"*

Where, as here, stated by Plaintiff, Pedro R. Lopez standing is put into issue by the defendant, the plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** must prove its standing in order to be entitled to relief (see Wells Fargo Bank Minn., N.A. v Mastropaolo, 42 AD3d 239, 242 [2007]; TPZ Corp. v Dabbs, 25 AD3d 787, 789 [2006]; see also Society of Plastics Indus. v County of Suffolk, 77 NY2d 761, 769 [1991]). In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced and that there was physical delivery of the **note** to **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** (see Mortgage Elec. Registration Sys., Inc. v Coakley, 41 AD3d 674 [2007]; Federal Natl. Mtge. Assn. v Youkelsone, 303 AD2d 546, 546-547 [2003]; 754*754 First Trust Natl. Assn. v Meisels, 234 AD2d 414 [1996]).

Recognizing the substantial power that the statutory scheme affords to a **mortgage** holder to foreclose **without** immediate judicial oversight, we adhere to the familiar rule that "one who sells under a power [of sale] must follow strictly its terms. If he fails to do so there is no valid execution of the power, and the sale is wholly void." *Moore* v. *Dick,* **187 Mass. 207, 211 (1905).** See *Roche* v. *Farnsworth,* **106 Mass. 509, 513 (1871)** (power of sale contained in **mortgage** "must be executed in strict compliance with its terms"). See also *McGreevey* v. *Charlestown Five Cents Sav. Bank,* **294 Mass. 480, 484 (1936).**

### Bank of NY v. Silverberg

86 AD 3d 274, 926 NYS 2d 532 - NY: Appellate Div., 2nd Dept., 2011... By contrast, "a transfer of the mortgage without the debt is a nullity, and **no** interest is acquired by it" (Merritt v Bartholick, 36 NY 44, 45 [1867]; see Carpenter v Longan, 83 US 271, 274 [1873] [an **assignment** of the mortgage without the **note** is a nullity]; US Bank NA v Madero, 80 ...

## *LEGAL ANALYSIS*

### *Mortgage Electronic Registration System - (MERS)*

The MERS system facilitated the transfer of loans into pools of other loans which were then sold to investors as securities (*see* Peterson at 1361-1362). MERS delivers savings to the participants in the real estate mortgage industry by "**allowing those entities to avoid the payment of fees which local governments require to record mortgage assignments (*see* Peterson at 1368-1369)**."

Lenders identify MERS as nominee and mortgagee for its members' successors and assignees. MERS remains the mortgagee of record in local county recording offices regardless of how many times the mortgage is transferred, thus freeing MERS's members from paying the recording fees that would otherwise be furnished to the relevant localities (*id.*; *see Matter of MERSCORP, Inc. v Romaine, 8 NY3d at 100*). This leaves borrowers and the local county or municipal recording offices unaware of the identity of the true owner of the **note**, and extinguishes a source of revenue to the localities.

In a mortgage foreclosure action, a plaintiff has standing where it is both the holder or assignee of the

subject mortgage and the holder or assignee of the underlying **note** at the time the action is commenced (*see U.S. Bank. N.A. v Collymore,* 68 AD3d at 753; *Countrywide Home Loans, Inc. v Gress,* 68 AD3d 709, 709 [2009]; *Wells Fargo Bank, N.A. v* 280*280 *Marchione,* 69 AD3d 204, 207-208 [2009]; *Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674, 674 [2007]; *Federal Natl. Mtge. Assn. v Youkelsone,* 303 AD2d 546, 546-547 [2003]; *First Trust Natl. Assn. v Meisels,* 234 AD2d 414 [1996]).

# **Analysis**

By contrast, "a transfer of the mortgage without the debt is a nullity, and **no** interest is acquired by it" (*Merritt v Bartholick,* 36 NY 44, 45 [1867]; *see Carpenter v Longan,* 83 US 271, 274 [1873] [an **assignment** of the mortgage without the **note** is a nullity]; *US Bank N.A. v Madero,* 80 AD3d 751, 752 [2011]; *US Bank, N.A. v Collymore,* 68 AD3d at 754; *Kluge v Fugazy,* 145 AD2d 537, 538 [1988] [plaintiff, the assignee of a mortgage without the underlying **note**, could not bring a foreclosure action]; [mortgagee's **assignment** of the mortgage lien, without **assignment** of the debt, is a nullity]; *Beak v Walts,* 266 App Div 900 [1943]). A "mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation" (*FGB Realty Advisors v Parisi,* 265 AD2d 297, 298 [1999]). Consequently, the foreclosure of a mortgage cannot be pursued by one who has **no** demonstrated right to the debt (*id.; see* 1 Bergman on New York Mortgage Foreclosures § 12.05 [1] [a] [1991]). In a dissent, former Chief Judge Judith S. Kaye posited that the MERS system raised several concerns, including the elimination of the **"public records"** which document mortgage loan ownership (*id.* at 100-105).

The principal issue ripe for determination by this Court, and which was left unaddressed by the majority in *Matter of MERSCORP* (*id.*), is whether MERS, as nominee and mortgagee for purposes of recording, can assign the right to foreclose upon a mortgage to a plaintiff in a foreclosure action absent MERS's right to, or possession of, the actual underlying promissory **note.** Here MERS lacked the power to assignment because it was not the holder of the underlying promissory **note.** Article III of the Uniform Commercial Code (UCC), *N.J.S.A.* 12A:3-101 to -605, governs the transfer of a negotiable instrument. *N.J.S.A.* 12A:3-301 is the provision of the UCC that addresses who may enforce negotiable instruments. It provides for three categories of persons entitled to enforce negotiable instruments:

## **Deutsche Bank Nat. v. Mitchell**

27 A. 3d 1229, 422 NJ Super. 214 - NJ: Appellate Div., 2011... Transfer of an instrument occurs "when it is **delivered** by a person other than its issuer for the ... **delivery** the right to enforce the instrument." NJSA 12A:3-203(a). Such a **delivery,** "whether or not ... in a **foreclosure** action, the plaintiff **must show** that it is the holder of the **note** and the ...

"Person entitled to enforce" an instrument means the holder of the instrument, a nonholder in possession of the instrument who has the rights of the holder, or a person not in possession of the instrument who is entitled to enforce the instrument pursuant to 12A:3-309 or subsection d. of 12A:3-418. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. [*N.J.S.A.* 12A:3-301.]

Article III defines indorsement as "a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of

negotiating the instrument." *N.J.S.A.* 12A:3-204(a).

The UCC Comment explaining this subsection provides:

If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as holder. [*N.J.S.A.* 12A:3-203 Uniform Commercial Code Comment 2.]

## *LEGAL FACTOR STATED BY PLAINTIFF, PEDRO R. LOPEZ:*

**American Partners Bank** was the original holder of the **note** that **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**  would like to enforce, and the copy of the **note** provided by **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**  is not indorsed. **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**  has not established that it may enforce the **note** as a "holder" as provided by *N.J.S.A.* 12A:3-301.

Because **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** has not demonstrated that it possessed the **note** at the time it filed the original complaint, it has not established standing under this section either. **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1 must** prove it had possession of the **note** when it filed the complaint to obtain standing.

A federal district court has also required that other plaintiffs prove they had possession of the notes when they filed **foreclosure** complaints or face dismissal without prejudice of twenty-seven complaints in *In re **Foreclosure** Cases*, 521 *F.Supp.*2d 650 (S.D.Ohio 2007 . The court noted, "[w]hile each of the complaints for **foreclosure** pleads standing and jurisdiction, evidence submitted either with the complaint or later in the case indicates that standing and/or subject matter jurisdiction may not have existed at the time certain of the **foreclosure** complaints were filed." *Id.* at 652. The court held that "[t]o **show** standing... in a **foreclosure** action, the plaintiff **must show** that it is the holder of the **note** and the **mortgage** at the time the complaint was filed." *Id.* at 653. The plaintiffs were then given thirty days to submit proofs that they had standing when the complaints were filed to prevent dismissal. *Id.* at 654.

**CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** could have established standing as an assignee, *N.J.S.A.* 46:9-9, if it had presented an authenticated assignment indicating that it was assigned the **note** before it filed the original complaint. The only evidence presented by **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** was to the contrary.

In support of its foreclosure complaint, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**  provided a certification of an attorney dated August 21, 2014, which stated that "[p]laintiff is entitled to enforce the **Note** and **Mortgage**. A copy of the Assignment of **Mortgage that UNDREN LAW OFFICES, P.C.** submitted to the courts is hereby attached to this complaint as Exhibit

B." The attorney certified that his knowledge was based upon his "custody and review of the computerized records of plaintiff which were made in the ordinary course of business as part of plaintiff's regular practice to create and maintain said records and which were recorded contemporaneously with the transactions reflected therein." **Please refer to exhibits "A,B".**

This attorney certification does not meet the requirement of personal knowledge we articulated in *Ford.* Attorneys in particular should not certify to "facts within the primary knowledge of their clients." As stated by Attorney, Nicole LaBletta, Esquire from UDREN LAW OFFICES, P.C. on her CERTIFICATION OF DILIGENT INQUIRY No. (2) "The name, title and responsabilities of the Plaintiff employer(s) or Plaintiff's mortgage loan service's employee(s) with whom I communicated are: Dawn Berry- assistant Vice-President; Responsible for reviewing and confirming the accuracy of business records and documents regarding foreclosure actions. *See* Pressler & Verniero, *Current N.J. Court Rules,* comment on *R.* 1:6-6 (2011); *Higgins v. Thurber,* 413 N.J.Super. 1, 21 n. 19, 992 A.2d 50 (App.Div.2010), *aff'd,* 205 N.J. 227, 14 A.3d 745 (2011).

## Flyer v. Sullivan

**284 AD 697,** 134 NYS 2d 521 - **NY: Appellate Div., 1st Dept., 1954 284 AD 697 (1954).** Herman **Flyer,** Appellant, v. William D. **Sullivan,** Defendant, and Irving Falbet al., Respondents. **...** COHN, J. Plaintiff seeks damages for the breach of a contract for the sale of a real estate mortgage made by defendant **Sullivan** allegedly as agent for defendants **...**

It has long been the law that a bond, or other obligation, secured by a mortgage lien on realty, is a chose in action and constitutes personal property. The mortgage is a mere incident of the bond or collateral security for the debt. The assignment by a mortgagee of the mortgage lien in the land, without an assignment of the debt, is considered in law as a nullity. (*Jackson ex dem. Curtis v. Bronson,* 19 Johns. 325; see, also, *Belfanc v. Belfanc,* 252 App. Div. 453. affd. 278 **N.Y.** 563; 2 Corbin on Contracts, § 403, p. 394, and Thomas on Mortgages [3d ed.], p. 263.) The bond or other evidence of indebtedness is the principal obligation and the mortgage is merely security for the personal indebtedness. (*Seamen's Bank for Sav. v. Smadbeck,* 293 **N.Y.** 91, 95; *Matter of Wilbur v. Warren,* 104 **N.Y.** 192, 197.)

# *LEGAL FACTOR STATED BY PLAINTIFF, PEDRO R. LOPEZ:*

Black's Law Dictionary 1076 [8th ed 2004] [defining a nominee as "(a) person designated to act in place of another, (usually) in a very limited way"]). Hence, although the consolidation agreement gave MERS the right to assign the mortgages themselves, it did not specifically give MERS the right to assign the underlying notes, and the **assignment** of the notes was thus **beyond** MERS's authority as nominee or agent of the lender (*see Aurora Loan Servs., LLC v Weisblum,* 85 AD3d 95, 108 [2d Dept 2011]; *HSBC Bank USA v Squitieri,* 29 Misc 3d 1225[A], 2010 NY Slip Op 52000[U] [2010]; *LNV Corp. v Madison Real Estate, LLC,* 2010 NY Slip Op 33376[U] [2010]; *LPP Mtge. Ltd. v Sabine Props., LLC,* 2010 NY Slip Op 32367[U] [2010]; *Bank of N.Y. v Mulligan,* 28 Misc 3d 1226[A], 2010 NY Slip Op 51509[U] [2010]; *OneWest Bank, F.S.B. v Drayton,* 29 Misc 3d 1021 [2010]; *Bank of N.Y. v Alderazi,* 28 Misc 3d 376, 379-380 [2010] [*the "party who claims to be the agent of another bears the burden of proving the agency relationship by a preponderance of the evidence"*]; *HSBC Bank USA, N.A. v Yeasmin,* 27 Misc 3d 1227[A], 2010 NY Slip Op 50927[U] [2010]; *HSBC Bank USA, N.A.*

*v Vasquez,* 24 Misc 3d 1239[A], 2009 NY Slip Op 51814[U] [2009]; *Bank of N.Y. v Trezza,* 14 Misc 3d 1201[A], 2006 NY Slip Op 52367[U] [2006]; *LaSalle Bank Natl. Assn. v Lamy,* 12 Misc 3d 282*282 1191[A], 2006 NY Slip Op 51534[U] [2006]; *In re Agard,* 444 BR 231 [2011]; *but see US Bank N.A. v Flynn,* 27 Misc 3d 802 [2010]).

## Sprint Communications Co. v. APCC SERVICES

554 US 269, 128 S. Ct. 2531, 171 L. Ed. 2d 424 - Supreme Court, 2008 -
... v. Metrophones **Telecommunications**, Inc., 550 US 45, 127 S.Ct. ... v. **Sprint Communications Co.**, 550 US 901, 127 S.Ct ... See Rule 14(a). And the carriers could always ask the Federal **Communications** Commission to find administrative solutions to any remaining practical problems ...

Article III, § 2, of the Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies." That case-or-controversy requirement is satisfied only where a plaintiff has standing. See, *e.g., Daimler-Chrysler Corp. v. Cuno,* 547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). And in order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.,* a "'fairly ... trace[able]'" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is "'likely'" and not "merely 'speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (calling these the "irreducible constitutional minimum" requirements).

Courts then strictly adhered to the rule that a "chose in action"—an interest in property not immediately reducible to possession (which, over time, came to include a financial interest such as a debt, a legal claim for money, or a contractual right)—simply "could not be transferred to another person by the strict rules of the ancient common law." See 2 W. Blackstone, Commentaries *442. To permit transfer, the courts feared, would lead to the "multiplying of contentions and suits," *Lampet's Case, supra,* at 48a, 77 Eng. Rep., at 997, and would also promote "maintenance," *i.e.,* officious intermeddling with litigation, see Holdsworth, History of the Treatment of *Choses* in Action by the Common Law, 33 Harv. L.Rev. 997, 1006-1009 (1920).

To be more specific, courts of equity would simply permit an assignee with a beneficial interest in a chose in action to sue in his own name. They might, however, require the assignee to bring in the assignor as a party to the action so as to bind him to whatever judgment was reached. See, *e.g., Warmstrey v. Tanfield,* 1 Ch. Rep. 29, 21 Eng. Rep. 498 (1628-1629); *Fashion v. Atwood,* 2 Ch. Cas. 36, 22 Eng. Rep. 835 (1688); *Peters v. Soame,* 2537*2537 2 Vern. 428, 428-429, 23 Eng. Rep. 874 (Ch. 1701); *Squib v. Wyn,* 1 P. Wms. 378, 381, 24 Eng. Rep. 432, 433 (Ch. 1717); *Lord Carteret v. Paschal,* 3 P. Wms. 197, 199, 24 Eng. Rep. 1028, 1029 (Ch. 1733);

The Creation and Transfer of Choses in Action 131 (2007) (by the beginning of the 18th century, "it became settled that equity would recognize the validity of the assignment of both debts and of other things regarded by the common law as choses in action").

Courts of law, meanwhile, would permit the assignee with an equitable interest to bring suit, but nonetheless required the assignee to obtain a "power of attorney" from the holder of the legal title, namely, the assignor, and further required the assignee to bring suit *in the name of that assignor.* See, *e.g.,* Cook, Alienability of Choses in Action, 29 Harv. L.Rev. 816, 822 (1916) ("[C]ommon law lawyers were able, through the device of the `power of attorney'... to enable the assignee to obtain relief in common law proceedings by suing in the name of the assignor"); 29 R. Lord, Williston on Contracts §

74:2, pp. 214-215 (4th ed.2003). Compare, *e.g., Barrow v. Gray*, Cro. Eliz. 551, 78 Eng. Rep. 797 (K.B.1653), and *South & Marsh's Case*. 3 Leo. 234, 74 Eng. Rep. 654 (Exch.1686) (limiting the use of a power of attorney to cases in which the assignor owed the assignee a debt), with Holdsworth, *supra*, at 1021 (noting that English courts abandoned that limitation by the end of the 18th century). At the same time, courts of law would permit an assignor to sue *even when he had transferred away his beneficial interest.* And they permitted the assignor to sue in such circumstances precisely because the assignor retained legal title.

Act of May 28, 1715, Ch. XXVIII, Gen. Laws of Penn. 60 (J. Dunlop Comp.2d ed. 1849) (permitting the assignment of "bonds, specialties, and notes" and authorizing "the person or persons, to whom the said bonds, specialties or notes, are ... assigned" to "commence and prosecute his, her or their actions at law"); Patent Act of 1793, ch. 11, § 4, 1 Stat. 322 ("[I]t shall be lawful for any inventor, his executor or administrator to assign the title and interest in the said invention, at anytime, and the assignee ... shall thereafter stand in the place of the original inventor, both as to right and responsibility").

Prior to the 17th century, English law would not have authorized a suit like this one. But that is because, with only limited exceptions, English courts refused to recognize assignments at all. See, *e.g., Lampet's Case*, 10 **Co**. Rep. 46b, 48a, 77 Eng. Rep. 994, 997 (K.B.1612) (stating that "no possibility, right, title, nor thing in action, shall be granted or assigned to strangers" (footnote omitted)); *Penson & Higbed's Case,* 4 Leo. 99, 74 Eng. Rep. 756 (K.B. 1590) (refusing to recognize the right of an assignee of a right in contract); see also 9 J. Murray, Corbin on Contracts § 47.3, p. 134 (rev. ed.2007) (noting that the King was excepted from the basic rule and could, as a result, always receive assignments).

## *LEGAL ANALYSIS*

A "mortgage is merely security for a debt or other obligation and cannot exist independently of the debt or obligation" (*FGB Realty Advisors v Parisi,* 265 AD2d 297, 298 [1999]). Consequently, the foreclosure of a mortgage cannot be pursued by one who has no demonstrated right to the debt (*id.*; *see* 1 Bergman on New York Mortgage Foreclosures § 12.05 [1] [a] [1991]).

In *Stickler v. Ryan* (270 App. Div. 962) the court stated the law as follows: "A real estate mortgage is wholly personal property. It is not a chattel real, nor does it create any estate or interest in real property. It is a mere chose in action, held as collateral security for the payment of a debt. Until foreclosure, as between the parties the mortgagor has the entire fee subject to the lien of the pledge. (*Trustees of Union College v. Wheeler,* 61 **N.Y.** 88; *Matter of Albrecht,* 136 **N.Y.** 91; *Becker v. McCrea,* 193 **N.Y.** 423; and cases cited; *Prudence Co. v. 160 W. 73d St. Corp.,* 260 **N.Y.** 205.)"

### Lasalle Bank National Association v. Ahearn
**59 AD 3d 911, 875 NYS 2d 595 - NY: Appellate Div., 3rd Dept., 2009 59 AD3d 911 (2009). 875 NYS2d 595. LASALLE BANK NATIONAL ASSOCIATION**, as **Trustee** for **Certificateholders** of Bear Stearns Asset-Backed Securities I, LLC Asset **...** In 2004, defendant Timothy J. **Ahearn** (hereinafter defendant) entered into a mortgage agreement with **...**

## *LEGAL ANALYSIS*

Notably, "foreclosure of a mortgage may not be brought by one who has no title to it" (*Kluge v Fugazy,* 145 AD2d 537, 538 [1988]) and an assignee of such a mortgage does not have standing to foreclose unless the assignment is complete at the time the action is commenced (*see Bankers Trust Co. v Hoovis,* 263 AD2d 937, 938 [1999]; *see also Mortgage Elec. Registration Sys., Inc. v Coakley,* 41 AD3d 674, 674 [2007]).

### A.

An assignment of a mortgage does not have to be in writing and can be effective through physical delivery of the mortgage (*see Flyer v Sullivan,* **284 App Div 697, 699 [1954]**). However, if it is in writing, the execution date is generally controlling and a written assignment claiming an earlier effective date is deficient unless it is accompanied by proof that the physical delivery of the note and mortgage was, in fact, previously effectuated (*see Bankers Trust Co. v Hoovis,* 263 AD2d at 938).

### B.

The Fair **Debt Collection** Practices Act, "regulates **debt collection**, not the practice of law. Congress repealed the attorney exemption to the act, not because of attorney[s'] conduct in the courtroom, but because of their conduct in the backroom. Only **collection** activities, not **legal** activities, are covered by the act. . . . The act applies to attorneys when they are collecting debts, not when they are performing tasks of a **legal** nature. . . . The act only regulates the conduct of **debt** collectors, it does not prevent creditors, through their attorneys, from pursuing any **legal** remedies available to them." 132 Cong. Rec. 30842 (1986).

### C.

Court of Appeals begin their analysis by highlighting the difference between a promissory note and a security interest. A promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another. *See Black's Law Dictionary* 1089 (8th ed. 2004) (defining "promissory note" as an "unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person"); *see also* Ga. Code Ann. § 11-9-102(a)(64) ("'Promissory note' means an instrument that evidences a promise to pay a monetary obligation...."). By contrast, a security interest is not a promise to pay a debt; it is an interest in some collateral that a lender can take if a debtor does not fulfill a payment obligation. *See Black's Law Dictionary* 1384 (8th ed. 2004) (defining a "security" as "[c]ollateral given or pledged to guarantee the fulfillment of an obligation"). A mortgage is a type of security interest with real property as the collateral. *See Black's Law Dictionary* 1031 (8th ed. 2004); *see also* Ga. Code Ann. § 44-14-30 ("A mortgage in this state is only security for a debt and passes no title.").

### D.

With the distinction between a promissory note and a security interest in mind, court can turn to the question of whether the Pedro R Lopez's complaint states a plausible claim for relief. The **FDCPA** prohibits a **"debt collector"**...aka...**Udren Law Offices P.C.** and **PHELAN HALLINAN & SCHMIEG** from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. That means in order to state a plausible **FDCPA** claim under § 1692e,

a Plaintiff, Pedro R Lopez must allege, among other things, (1) that the defendant is a "debt collector" and (2) that the challenged conduct is related to debt collection. **See Exhibit " B"** Affidavit Of Service from the **Udren Law Offices P.C.** served to  Piedad Lopez, located at 765 Linden Avenue, Elizabeth, New Jersey 07202 ( Page # 3) stating, **" THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE".**

## Sprint Communications Co. v. APCC SERVICES

554 US 269, 128 S. Ct. 2531, 171 L. Ed. 2d 424 - Supreme Court, 2008 **...** r) (holding that the assignee with **legal** title to a cause of action was "**legally** the real **...** I do not take the majority's point to be that the common-**law** tradition supplies the answer to **...** These courts concluded that assignees having no **legal** or beneficial interest to vindicate could not sue **...**

# *LEGAL ANALYSIS*

## I. Legal Standard

Defendant's motion to dismiss for lack of **standing** is a challenge to the Court's subject matter jurisdiction brought pursuant to Fed.R.Civ.P. 12(b)(1). "For purposes of ruling on a motion to dismiss for want of **standing** ... courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The burden is on plaintiffs to establish the elements of **standing**. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).The defendants contend, among other things, that because the plaintiff failed to provide *proof of recording* of the corrected **assignment** of the mortgage and the note, prior to the commencement of the action, it may be inferred that the plaintiff did not own the notes and mortgages prior to that date, that they filed this foreclosure complaint on August 14, 2014

History and precedent show that, for centuries, courts have found ways to allow assignees to bring suit; where assignment is at issue, courts—both before and after the founding—have always permitted the party with legal title alone to bring suit; and there is a strong tradition specifically of suits by assignees for collection. And while precedents of this Court, *Waite v. Santa Cruz,* 184 U.S. 302, 22 S.Ct. 327, 46 L.Ed. 552, *Spiller v. Atchison, T. & S.F.R. Co.,* 253 U.S. 117, 40 S.Ct. 466, 64 L.Ed. 810, and *Titus v. Wallick,* 306 U.S. 282, 59 S.Ct. 557, 83 L.Ed. 653, do not conclusively resolve the standing question here, they offer powerful support for the proposition that suits by assignees for collection have long been seen as "amenable" to resolution by the judicial process, *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 102, 118 S.Ct. 1003, 140 L.Ed.2d 210. Pp. 2535-2542.

Petitioners' reasons for denying prudential standing—that the aggregators are seeking redress for third parties; that the litigation represents an effort by the aggregators and payphone operators to circumvent Federal Rule of Civil Procedure 23's class-action requirements; and that practical problems could arise because the aggregators are suing, *e.g.,* payphone operators may not comply with discovery requests or honor judgments—are unpersuasive. And because there are no allegations that the assignments were made in bad faith and because the assignments were made for ordinary business purposes, any other prudential questions need not be considered here. Pp. 2543-2546.

## *STATEMENT OF THE PLAINTIFF, PEDRO R. LOPEZ:*

For this very same reasons, the court(s) should deny prudential standing regarding the Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** is that the aggregators are seeking redress for third parties; that the litigation represents an effort by the aggregators and thePlaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** due to circumvent Federal Rule of Civil Procedure 23's class-action requirements; and that practical problems could arise because the aggregators are suing, *e.g.,* Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** may not comply with discovery requests or honor judgments—are unpersuasive. And because there are no allegations that the assignments were made in bad faith and because the assignments were made for ordinary business purposes only. As we stated in *Bell* v. *Hood.* 327 U. S. 678, 682 (1946),  "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover." Rather, the district court has jurisdiction if "the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another," *id.,* at 685, unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.,* at 682-683; see also *Bray* v. *Alexandria Women's Health Clinic.* 506 U. S. 263, 285 (1993); *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22, 25 (1913).

# II. Article III of the Constitution

Article III of the Constitution limits the "judicial power" of the United States to the resolution of "cases" and "controversies." The constitutional power of federal courts cannot be defined, and indeed has no substances, without reference to the necessity "to adjudge the legal rights of litigants in actual controversies." *Liverpool S. S. Co.* v. *Commissioners of Emigration,* 113 U. S. 33, 39 (1885). The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.

There is an important distinction between simply hiring a lawyer and assigning a claim to a lawyer. The latter confers a property right (which creditors might attach); the former does not. Finally, as a practical matter, it would be particularly unwise to abandon history and precedent in resolving the question here, for any such ruling could be overcome by, e.g., rewriting the agreement to give the aggregator a tiny portion of the assigned claim itself, perhaps only a dollar or two. Pp. 2541-2544.

The District Court initially agreed to dismiss, in the case as stated here: *APCC Servs.. Inc. v. AT & T Corp.,* 254 F.Supp.2d 135, 140-141 (DC 2003),  but changed its mind in light of a "long line of cases and legal treatises that recognize a well-established principle that assignees for collection purposes are entitled to bring suit where [as here] the assignments transfer absolute **"title"** to the claims." *APCC Servs.. Inc. v. AT & T Corp.,* 281 F.Supp.2d 41, 45 (DC 2003). After consolidating similar cases, a divided panel of the Court of Appeals for the District of Columbia Circuit agreed that the aggregators have standing to sue, but held that the relevant statutes do not create a private right of action. *APCC Servs., Inc. v. Sprint Communications Co.,* 418 F.3d 1238 (2005) *(per curiam).*

Prior to the 17th century, English law would not have authorized a suit like this one. But that is

because, with only limited exceptions, English courts refused to recognize assignments at all. See, *e.g., Lampet's Case,* 10 **Co**. Rep. 46b, 48a, 77 Eng. Rep. 994, 997 (K.B.1612) (stating that **"no possibility, right, title, nor thing in action, shall be granted or assigned to strangers"** (footnote omitted)); *Penson & Higbed's Case,* 4 Leo. 99, 74 Eng. Rep. 756 (K.B. 1590) (refusing to recognize the right of an assignee of a right in contract); see also 9 J. Murray, Corbin on Contracts § 47.3, p. 134 (rev. ed.2007) (noting that the King was excepted from the basic rule and could, as a result, always receive assignments).

## *Plaintiff Lacks Standing Under Article III of the Constitution*

Article III, § 2 of the United States Constitution restricts federal courts to deciding "Cases" and "Controversies." From this has emerged the doctrine of constitutional **standing**. Federal courts must determine **[standing]** at the threshold of every case.... "It would violate principles of separation of powers for us to hear a matter that was not a case or controversy and therefore not delegated to the [federal] judiciary under Article III."

### I.

"Article III **standing** requires that the plaintiff "have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal citations and quotation marks omitted); *accord Vt. Agency of Natural Res. v. United States ex. rel. Stevens,* 529 U.S. 765, 771, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000); *St. Pierre v. Dyer,* 208 F.3d 394, 401 (2d Cir.2000); *Vazquez,* 145 F.3d at 80; *cf. Valley Forge Christian Coll. v. Ams. United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982) ("[A]t an irreducible minimum, Art. III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.") (citation and internal quotation marks omitted).

### II.

Article III, § 2, of the Constitution restricts the federal "judicial Power" to the resolution of "Cases" and "Controversies." That case-or-controversy requirement is satisfied only where a plaintiff has standing. See, *e.g., Daimler-Chrysler Corp. v. Cuno,* 547 U.S. 332, 126 S.Ct. 1854, 164 L.Ed.2d 589 (2006). And in order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a "concrete and particularized" invasion of a "legally protected interest"); (2) causation (*i.e.,* a "`fairly ... trace[able]'" connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is "`likely'" and not "merely `speculative'" that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Lujan v. Defenders of Wildlife,* 504 U.S. 555. 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (calling these the "irreducible constitutional minimum" requirements).

Courts then strictly adhered to the rule that a "chose in action"—an interest in property not immediately reducible to possession (which, over time, came to include a financial interest such as a debt, a legal claim for money, or a contractual right)—simply **"could not be transferred to another person by the strict rules of the ancient common law."** See 2 W. Blackstone, Commentaries. To permit transfer, the courts feared, would lead to the "multiplying of contentions and suits," *Lampet's Case, supra,* at 48a, 77 Eng. Rep., at 997, and would also promote "maintenance," *i.e.,* officious intermeddling with litigation, see Holdsworth, History of the Treatment of *Choses* in Action by the Common Law, 33 Harv. L.Rev. 997, 1006-1009 (1920).

**US Bank National Association v. Ibanez**

458 Mass. 637, 941 NE 2d 40 - Mass: Supreme Judicial Court, 2011 ... Because of the failure of US Bank to document any preforeclosure sale assignment or **chain** of assignments by which it obtained the Ibanez mortgage from Option One, it is unnecessary to address the validity of the assignment from Rose Mortgage to Option ... 21] **Title** Standard No ...

## FACTS

### FAILURE TO FILE CHAIN OF ASSIGNMENTS IN A FORCLOSURE ACTION

The Defendant,**CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** who were not the original mortgagees, failed to make the required showing that they were the holders of the mortgages at the time of foreclosure. As a result, they did not demonstrate that the foreclosure sales were valid to convey **title** to the subject properties, and their requests for a declaration of clear **title** were properly denied. **See Exhibit "A", a true and correct copy of the Complaint filed with an attached affidavit by** an agent/Attorney from **PHELAN HALLINAN & SCHMIEG,** stating that they fiscally communicate with an agent of **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1, file in the underlying action,** missing chain of assignment to the Defendant,**CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**

## Glaski v. Bank of America

218 Cal. App. 4th 1079, 160 Cal. Rptr. 3d ... - Cal: Court of Appeal, 5th ..., 2013 ... the contrary; (3) Quiet **title** against Bank of America, Chase, and California Reconveyance based on the broken **chain** of **title** caused by the defective transfer of the loan to the WaMu Securitized Trust; (4) Wrongful foreclosure ...

# INTRODUCTION

Before Washington Mutual Bank, FA (WaMu), was seized by federal banking regulators in 2008, it made many residential real estate loans and used those loans as collateral for mortgage-backed securities.[1] Many of the loans went into default, which led to nonjudicial foreclosure proceedings. Some of the foreclosures generated lawsuits, which raised a wide variety of claims. The allegations that the instant case shares with some of the other lawsuits are that (1) documents related to the foreclosure contained forged signatures of Deborah Brignac and (2) the foreclosing entity was not the true owner of the loan because its **chain** of ownership had been broken by a defective transfer of the loan to the securitized trust established for the mortgage-backed securities. Here, the specific defect alleged is that the attempted transfers were made *after the closing date* of the securitized trust holding the pooled mortgages and therefore the transfers were ineffective.

# *Sale of the Property By Judgment Unlawfully Executed*

## *US Bank Nat. Ass'n v. Guillaume*

38 A. 3d 570, 209 NJ 449 - NJ: Supreme Court, 2012 ... a notice of intention as required by NJSA 2A:50-56(c)(11) warranted **reversal** of the ... trial court's determination under the rule warrants substantial deference, and should not be **reversed** unless it ... 126, 138-39, 946 A.2d 578 (App.Div.2008) (**reversing** grant of summary judgment in ...

## *LEGAL FACTOR STATED BY PLAINTIFF, PEDRO R. LOPEZ:*

Defendant, Pedro Lopez is attempt to demonstrate excusable neglect and the existence of a meritorious defense, *Rule* 4:50-1(a), that the trial court's judgment is void, *Rule* 4:50-1(d), or that this case presents exceptional circumstances, *Rule* 4:50-1(f), *Rule* 4:50-1(b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49 and *Rule* 4:50-1(c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party. As to the meritorious defenses compelled by *Rule* 4:50-1(a), the Pedro Lopez invoke the Fair Foreclosure Act (FFA), *N.J.S.A.* 2A:50-53 to -68, the Truth in Lending Act (TILA), 15 *U.S.C.* §§ 1601 to 1667f and all the assignments in the **"Chain Of Title"**, Rule 4:64-1(b)(10).

## *RULE 4:50. Relief From Judgment Or Order 4:50-1. Grounds of Motion*

On motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under R. 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

Note: Source -R.R. 4:62-2 (first sentence); amended July 15, 1982 to be effective September 13, 1982; amended July 13, 1994 to be effective September 1, 1994.

## **Bank of New York v. Raftogianis**

13 A. 3d 435, 418 NJ Super. 323 - NJ: Superior Court, Chancery ..., 2010 ... That is clearly contemplated by the **Rules** of Court. See **Rule 4:64-1(b)(10)** (providing that when the plaintiff is not the original mortgagee or the original nominee mortgagee, the complaint must recite "all assignments in the chain of title.") See also **Rule** 4:34-3 (dealing with the ...

How does one become a holder of a negotiable note? In addressing that question it is necessary to distinguish between "transfer" and "negotiation." It is also necessary to distinguish between the handling of notes payable "to order" and notes payable "to bearer." In this particular case, it is also necessary to recognize that a note initially made payable "to order" can become a bearer instrument, if

it is endorsed in blank. *See N.J.S.A.* 12A:3-109(c), providing that an instrument payable to an identified person may become payable to bearer if it is endorsed in blank. *See also N.J.S.A.* 12A:3-205(b) (describing what qualifies as a blank endorsement); and Miller & Harrell, *The Law of Modern Payment Systems and Notes* § 2.02 at 77-78 (2002) (noting that an instrument bearing the endorsement "Pay to the order of _____" is a bearer instrument). Such a bearer note can be both transferred and negotiated by delivery alone. *See Corporacion Venezolana de Fomento v. Vintero Sales, 452 F.Supp. 1108, 1117 (S.D.N.Y.1978).*

# THE UNIFORM COMMERCIAL CODE

Mortgages provide security for the debtor's obligation to pay an underlying obligation, ultimately permitting the mortgagee to force the sale of the property to satisfy that obligation. As a general proposition, a party seeking to foreclose a mortgage must own or control the underlying debt. *See Gotlib v. Gotlib,* 399 N.J.Super. 295, 944 A.2d 654 (App.Div. 2008); *Garroch v. Sherman,* 6 N.J.Eq. 219 (Ch.1847); *Bellistri v. Ocwen Loan Servicing, LLC,* 284 S.W.3d 619 (Mo.App.2009). The debt itself is typically evidenced by some other document. The manner in which one obtains control over the debt will depend upon the nature of the underlying obligation.

Typically, the debt secured by a mortgage will be evidenced by a bond or a note. Notes, in turn, may be negotiable or nonnegotiable. The handling of negotiable instruments presents a variety of distinct issues, precisely because they are negotiable. Issues may be presented, in a variety of circumstances, as to just how interests in a negotiable instrument can be transferred or "negotiated," and as to the rights and responsibilities of those involved, including the original obligor, the original obligee and third parties. Disputes over the handling of negotiable instruments can arise in a variety of contexts.

Under the UCC, the transfer of an instrument requires that it be delivered for the purpose of giving the person receiving the instrument the right to enforce it. A negotiable note can be transferred without being negotiated. That transfer would be effected by the physical delivery of the note. *See N.J.S.A.* 12A:3-203(a). In that circumstance, the transferee would not be a holder, as that term is used in the UCC. Such a transferee, however, would still have the right to enforce the note. The UCC deals with that circumstance in the following language:

Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

[N.J.S.A. 12A:3-203(b).]

The negotiation of the instrument, on the other hand, requires both a transfer of possession and an endorsement by the holder. An instrument which is payable to bearer may be negotiated by transfer alone. Put otherwise, an instrument payable "to order" can be negotiated by delivery with an endorsement, while an instrument payable "to bearer" can be negotiated by delivery alone. *N.J.S.A.* 12A:3-201. To enforce the note at issue here, as a holder pursuant to *N.J.S.A.* 12A:3-301, plaintiff would have to establish that it received the note, through negotiation, at the appropriate time. That would require that the note be endorsed prior to or at the time of delivery, either in favor of plaintiff or in blank.

A number of cases recognize that there can be constructive delivery or possession, through the delivery of the instrument to an agent of the owner. *See Midfirst Bank, SSB v. C.W. Haynes & Co., 893 F.Supp. 1304, 1314-15 (D.S.C.1994); Fed. Deposit Ins. Corp. v. Linn, 671 F.Supp. 547, 553 (N.D.Ill.1987); Corporation Venezolana de Fomento, supra, 452 F.Supp. at 1117.*

Under either of the provisions of *N.J.S.A.* 12A:3-301 which are at issue here, the person seeking to enforce the note must have possession. That is required to be a holder, and to be a nonholder in possession with the rights of a holder. The application of the provisions of the UCC to the dispute presented here will be discussed below.

25. Defendants, "All Collection Attorneys for **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** ", is intended to reference and include all attorneys throughout the United States of America who represent **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** in collection actions for alleged mortgages loans debt throughout the United States of America. Their names and addresses are not yet known. Each and all of the National Attorneys are "debt collectors" as that term is defined by 15 U.S.C. § 1692a(6).

## III. JURISDICTION AND VENUE

26. Jurisdiction is conferred upon this Court pursuant to 15 U.S.C. § 1692k(d)("FDCPA").

27. Venue is appropriate in this district as the violations underlying this action were made in this District; all defendants but for the National Attorneys conduct business in this district.

## IV. SUMMARY STATEMENT OF THE CASE

28. This case arises from a scheme formally concocted and perpetuated by Defendants, as described in the following scenario:

When defendants engage in the initiation and perpetuation of mortgages loans collection law suits, they attach to the Complaint false documents intended to represent the governing contract, false assignment of mortgages, without assignments of the underlying note by and between **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** and its partner(s) when, in fact, the attached contract/false assignment in the " Chain Of Title" are purposely and intentionally false documents misrepresented as the actual Mortgage assignment Agreement for transfer of mortgage loan by the Defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**; the attached false assignment of mortgage filed with Union County records are dated regarding transfer of mortgage only without "**Power of Attorney**" or "**Assignment of the underlying Note**" to the party or parties before the date of the initial foreclosure complaint was filed, and therefore, cannot represent the true transfer of the mortgage and the note, nor can it full justify the right to pursue a judgment regarding another parties debt regarding foreclose.

29. As a result of a directive issued by **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST**

**SERIES 2013-1**, all Defendants have been and are, at all times relevant, aware that they have been and are utilizing false documentation as evidentiary documentation on a national basis.

30. In too many cases, the wronged consumers/ potential homeowners - those whom the United States Congress has referenced as "the least sophisticated consumers/ potential homeowners "- succumb to the I perceived power and ostensible computer-accuracy of the "TRUSTEE", **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**,and debt collectors and these improperly named litigant-defendants pay and/or permit judgments to be achieved against them. Otherwise, these wronged consumers are forced to seek counsel at a financial cost and burden.

31. These acts by defendants have violated and continue to violate both federal and state law, adversely affecting interstate commerce, and Plaintiff on behalf of herself have suffered damages as a result, by way of wrongful judgment, foreclosure execution, improper sheriff's sale and improper eviction action.

## V. CLASS ACTION ALLEGATIONS

32. This case is properly maintainable as a nationwide Class action pursuant to and in accordance with Federal Rule of Civil Procedure ("F.R.C.P."), Rule 23(a), and 28 U.S.C. 1332(d), *inter alia:*

(1) On belief, the Plaintiff / Class is so numerous that joinder of all members is impractical. Although the size of the Class is not specifically known, the number of Class members is substantial, believed numbering at least in the tens of thousands.

*(2)* There are substantial questions of law and fact common to the Complaint filed by Defendant **UNDREN LAW OFFICES, P.C.**. and Defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** under *Docket Number:* F-034946-14 on August 22, 2014.

(3) The claims of the representative Plaintiff are typical of the claims of the members before him.

(4) The representative Plaintiff will fairly and adequately protect the interests of this Civil action under the criteria set forth in F.R.C.P. 23.

(5) A civil action under the circumstances discussed herein provides the most fair and efficient method for adjudication of the controversy under the criteria set forth in F.R.C.P. 23.

33. This case is properly maintainable as a civil action pursuant to and in accordance with F.R.C.P. 23(b)(3).

a. The issues of fact are common to the Plaintiff, as required by Local Rule of Civil Procedure ("Local Rule") far the Eastern District of New Jersey 23.1(b)(2)(D).

b. The questions of law are common to the members of a civil action lawsuit or the Plaintiff, Pedro Lopez, a required by Local Rule 23.1(b)(2)D).

c. The questions of law and the questions of fact predominate for the Plaintiff, Pedro Lopez, over any questions of law and/or fact affecting only individual, the Plaintiff Pedro Lopez.

d. A Civil action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Plaintiff Pedro Lopez, are overwhelmingly predominant.

e. As the questions of law and of fact are common to the Plaintiff and considering the prospective individual damages at issue, the interests of the Plaintiff, Pedro Lopez, will best be controlled and served by this action.

f. There is no reason why the litigation should not proceed in this particular forum.

g. There are no unusual difficulties foreseen to be encountered in the management of this Civil action.

h. Plaintiff is aware of similar actions involving similar issues involving , "**CTADOWSFSFATFSMLTS 2013-1**USA", and other defendants, having been filed in the United States District Court for the Eastern District of New Jersey

*See Footnote 1, below:*

1. The claim by Plaintiff, herself, of the Civil Action is justified as a Civil action for the reason that, although the size of the Class/ other Plaintiffs is not specifically known, the number of Class members/ Plaintiffs is substantial, believed numbering at least in the tens of thousands on a nationwide basis.

34. A Civil/ Class action is superior to any other action for the fair and efficient adjudication of the controversy as the commonality of factual and legal questions for the Plaintiff/ Class is overwhelmingly predominant.

35. As the questions of law and of fact are common to the members of the Class/ other Plaintiffs and considering the prospective individual damages at issue, the interests of the members of the Class/ other Plaintiffs will best be controlled and served by this action.

36. The claims by Plaintiff, for herself and for and on behalf of the members of the Class/ other Plaintiffs, are justified as a Civil/ Class action for the reason that the causes of action for the Plaintiff is the same cause of action for all Civil action that derived from the following issues:

a. Whether Defendants, in initiating and perpetuating collection lawsuits, have wrongfully and/or knowingly done so regardless of the knowing lack corroborating documents or evidence available to substantiate the claims asserted;

b. Whether Defendants, in initiating and perpetuating collection lawsuits, have wrongfully, intentionally and/or knowingly attached clearly inapplicable and false exhibits and evidence, falsely representing that they are the applicable contracts;

c. Whether Defendants have a uniform policy of attaching and misrepresenting the purported contracts to the complaints as the applicable and governing contract between the parties, which agreements bear no relationship to the respective members of the Class or to the Plaintiff ;

d. Whether Defendants have a uniform policy of presenting and misrepresenting the purported contracts as evidence as the applicable and governing contract between the parties, which agreements bear no relationship to the respective members of Class or to the Plaintiff's;

e. Whether defendants conspire one with the other to proffer the misrepresentations to the members of the Class or to the Plaintiff's;

f. Whether these acts and actions are violation of the FDCPA;

g. Whether these acts and actions are violation of New Jersey's Consumer Protection laws;

h. Whether these acts and actions described above are violation of the consumer protection statutes of the Commonwealth of New Jersey;

i. Whether the acts of intentionally proffering inapplicable assignment of the mortgage without an attached assignment of the underline note as required under N.J.S.A. 12A:3-109(c), N.J.S.A. 12A:3-309, or subsection d. of N.J.S.A. 12A:3-418 and Article 3 of UCC , codified in this State as N.J.S.A. 12A:3-301 in false support of litigation claims constitutes an attempt to collect debts not authorized by contract or law;

j. Whether Plaintiff, Pedro Lopez incurred damages as a result of these violations and are Defendants liable therefore;

k. Whether Plaintiff is / are entitled to in junctive relief, restitution, interest thereon, attorney's fees, punitive damages, statutory damages and other damages as a result of the improper attempts to collect mortgage loan debt from non-liable person or party, that has yet to be fully proven base on 100% physically evidence shown by all accountable defendants in the prior action pretending to foreclosure under *Docket Number:* F-034946-14.

# VI. THE CIVIL  ACTION ALLEGATIONS

37. The above-named Plaintiff brings this action on behalf of herself and:

All persons who have been the subject of collection law suits brought by Defendants for which the Defendants have attached as corroborative exhibits and/or as evidence printed county records showing an assignment of mortgage with out an assignment of the under line note, misrepresented by defendants as the applicable governing on mortgage loan agreement, true holder liability and misrepresented as the alleged written basis for the liability asserted by **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**, which misrepresented documents are for foreclosure proceedings of another party property/home of the issuance of the subject mortgage loan documentation done by the defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON  SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** and, as such, cannot represent the applicable operative contract/ mortgage loan agreement.

## VII. PLAINTIFFS' FACTUAL STATEMENT

38. In the case of the individual Plaintiffs attorney, **UNDREN LAW OFFICES, P.C.**, Nicole La Bletta, ("LaBletta" or "Plaintiff"'s) attorney **UNDREN LAW OFFICES, P.C.**, for and on behalf of defendant, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1**, filed a Complaint against Plaintiff seeking collection of an alleged defaulted mortgage loan debt.

This complaint was filed in the Court of Union County Superior Courts, New Jersey docketed as **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** vs. Pedro R. Lopez and Piedad Lopez,  Docket Number F-034946-14

See a true and correct copy of the Complaint, with exhibits, attached hereto and marked **Exhibit "A"**.

39. Rather than remove the complaint marked as Exhibit "A", Plaintiff, **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** and Plaintiffs attorney, **UNDREN LAW OFFICES, P.C.**, has chosen to defend that Complaint and file this original complaint. In significant form, Exhibit "A" hereto follows as a false Complaint, filed by the Defendants to justify that they had every legal right to collect upon this official debt, without proper documentation, to legally justify that the Plaintiff was in fact the legal holder in due course of the assigned note and not just a holder of the underline assigned mortgage.

40. The Complaint in the captioned underlying action references "Mortgage loan agreement/ assigned to defendant **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** provided", directly or indirectly, as follows:

a. On the initial court complaint states: "On or about April 04, 2008,Defendant's Pedro R. Lopez and Piedad Lopez entered into Mortgage loan agreement with to American Partners Bank, A Federal Savings Bank, for services mortgage loan agreement.  The printed mortgage loan agreement are attached hereto as Exhibit "A" and incorporated into evidence." See the Exhibit "A" to Exhibit "A" attached hereto.

b. On the initial PROOF OF AMOUNT DUE AFFIDAVIT AND SCHEDULE, filed on 06/02/2015 states: "Pursuant to the terms for the loan Agreement services provided on the account(s) attached which is now in default the sum of $ 425,348.48." "The Defendant also owes interest from 08/01/2008 to 03/23/2015 in the amount of $ 169,550.71 interest rate 6% per year; $69.92 per day x 2,425 days equals for total of $ 169,550.71. Please refer to Plaintiff's Exhibit marked as **(Da21)**

Late charges from 08/18/2014 to 03/22/2014 $102.31

Advances through 03/23/2015 for: Real Estate Taxes $21,156.01

Home Owners Insurance Premiums $ 1,085.00

Inspections $ 90.00

Sub-Total of Advances $ 22,331.01

Net Advances $ 22,331.01

TOTAL DUE AS OF 03/23/2015 $ 617,332.51

c. Paragraph 4 states: "Plaintiff avers that Defendant breached the agreement and is in default for failing to make payments. Plaintiff also alleged that it is in title to enforce the note and the mortgage. If Plaintiff's entitled to enforce the Note and Mortgage by virtue of Assignment of Mortgage, it is by assignment of records as follow:

d. Paragraph 1 states: On April 04, 2008 Defendant's Pedro R. Lopez and Piedad Lopez entered into Mortgage loan agreement with to American Partners Bank a Note to secure the sum of $ 426,629.00, with interest thereon at 6.00000% per annum, on the unpaid balance until paid, said principal and interest to be in monthly installments commencing on 06/01/2008 and on the same day of each month thereafter until the principal and interest are paid in full, expect that the final payment of principal and interest, if not paid sooner shall be due and payable on 05/01/2038.

e. Paragraph 2 states: Plaintiff avers that Defendant executed to Mortgage Electronic Systems, Inc., as nominee for American Partners Bank a mortgage of even date with the Note. Said Mortgage was duly recorded on 05/06/2008 in Union County in Mortgage Book M12481, page 0816. Said Mortgage is not a purchase money mortgage.

41. The initial complaint file by UNDREN LAW OFFICES, P.C. by Attorney Nicole LaBletta, Esq. , attached to the Complaint is separately attached hereto as Plaintiffs' **Exhibit "Da1"**.

42. The first, and introductory, part of the initial complaint, page 1 pretends to both parties, Pedro Lopez a/k/a Pedro R. Lopez executing a note to secure the sum of $ 426,629.00, with interest thereon, but does not specify the means as to which this sum stated above was officially executed.

43. The last page of the Assignment of Mortgage, still states: that Daniel G. Shmieg is Assistant secretary and Vice President for "MERS" Mortgage Electronic System. At this initial time he was acting as an official agent/ employee for MERS, however he is an official partner of PHELAN HALLINAN & SHMIEG ESQS, the Philadelphia branch and for which the courts will see that this documentation was also notarized and in Philadelphia by Eugene Jaskiewicz which is a Robo-signer thus as evidence being provided by Plaintiff, Pedro R. Lopez of two (2) signatures of Eugene jaskiewicz pretending to Notarization of assignments. One dated 01/23/2009 and another dated 11/12/2010.... Exhibits (C) and (D)

44. The language of the generic, form, the Complaint - clearly, a template indicates unequivocally that an assignment of the mortgage loan agreement is justification to collect upon a default debt by another party and is NOT a modification or amendment to a previously issue of missing a signed assignment of the official underline Note to justify that the Plaintiff was in fact the holder of the underline Note regarding all assignments in the Chain of Title.

45. The **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1,** as state in the

initial complaint filed by Attorney Nicole LaBletta, Esq, from Udren Law Offices, P.C. itself, indicates unequivocally that it is NOT a modification or amendment to a previously issued by Daniel G. Shmieg regarding assignment from MERS Mortgage Electronic Systems, Inc., as nominee for American Partners Bank on the assignment of mortgage agreement.

46. The basis of the captioned matter, and the basis of several other similar cases 1, all filed with this Court, is the fact that, and its attorneys on a national basis purposely, intentionally, conspiratorially, and, most importantly, systemically and

a. Plaintiff is not aware of any assignment of mortgage loan, underline note agreement or any notice of any transfers regarding the Defendant's **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** taking possession of the mortgage agreement or underline note.

b. The fraudulent assignment of mortgage through MERS appears to have been published in the year 2009. (Please see exhibit Da14).

47. In any event, the proffered Plaintiff defaulted the mortgage loan on or about August 2009 and the Defendants Attorney Nicole LaBletta, Esq, from Udren Law Offices, P.C. and **CHRISTIANA TRUST ; A DIVISION OF WILMINGTON SAVING FUNDS SOCIETY, FSB, AS TRUSTEE FOR STANWICH MORTGAGE LOANS TRUST SERIES 2013-1** waited until August 22, 2014 (5) years after the initial default was committed from Pedro Lopez and Piedad Lopez on or about August 2009

48. Clearly, the attached initial mortgage assignment has being filed without attached of all assignments, that is clearly contemplated by the Rules of Court. See Rule 4:64-1(b)(10) (providing that when the "Plaintiff" is not the original mortgagee or the original nominee mortgagee, the complaint must recite **"all assignments in the chain of title."**) Thus, this Rule 4:64 gives the defendant the right to request a complete "Chain of Title"/transfer of ownership, to see in fact; (Chain of Title ) under Rule 4:64-1(b)(10)

49. The attached assignment of the mortgage is NOT a modification or amendment, or the like.

50. The initial CIVIL ACTION SUMMONS dated 10/17/2014 accompanying on page 3 stating from Udren Law Offices, **"See Exhibits "E" "Da2",** a true and correct copy of the letter filed and sent to the Plaintiff, Pedro Lopez. By the Defendant, Udren Law Offices, P.C stating the current verbage, as stated below in their letters, they have legally violated the rights of the Plaintiff, Pedro Lopez under the FDCPA and reinstated the Plaintiff's right to file a valid claim/ complaint against them.

## "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTANED WILL BE USED FOR THAT PURPOSE."

51. These wrongful collection activities are intended by the Defendants to secure collection from those whom the United States Congress has defined as the "least sophisticated consumer".

52. These wrongful collection activities include, but are not limited to:

a. Attaching as exhibits to complaints documentation knowingly not pertinent or relevant, constituting misrepresentation; and

b. Proffering as evidence documentation knowingly not pertinent or relevant, constituting misrepresentation.

## VIII. COMMON CLASS ELEMENTS

53. Plaintiff and each member of the Class has been the subject of collection efforts to collect debts for which there is no corroborative evidence in the form of a valid chain of title, and possibly other relevant documentation.

54. The lawsuits against Plaintiff and the members of the Class with their knowingly wrong attachments and the knowing lack of corroborative evidence constitute violations of the FDCPA.

55. All of these similar law suits are and have been in violation of various state consumer protection statutes.

56. As to the individual Plaintiff, the attempts to collect and/or the collection of these unsubstantiated contractual charges and use of false documentation are in violation of the provisions of 73 P.S. S 2270.4(b) including, but not limited to sub-section (6) thereof:

"A creditor may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this paragraph: (i) The collection of any amount, including interest, fee, charge or expense incidental to the principal obligation, unless such amount is expressly authorized by the agreement creating the debt or permitted by law." (Emphasis Supplied.)

Please refer to **Exhibit "A through E"**

57. These issues of fact, therefore, for all members of the Class and the Plaintiff, Pedro Lopez are the same as set forth above, with minor, not substantial, variation.

58. The questions of law governing the rights of each member of the respective Class are the same as they relate to Plaintiff, Pedro Lopez and involve the all-pervasive issue as to the legality in law of an attempt to collect mortgage loan debt utilizing of fraudulent documentation therefore.

59. Defendants engage in a uniform scheme and course of conduct to inflate their respective profits by routinely attempting to collect and collecting mortgage loan debt by filing law suits utilizing and misrepresenting of fraudulent documentation as exhibits and evidence.

IX. CAUSES OF ACTION

X. COUNTI- VIOLATION OF 15 U.S.C. S. 1692a, CLASS ACTION

PLAINTIFF, UDREN LAW OFFICE, P.C. LAW FIRM

60. The averments of paragraphs one through and including fifty-nine above are incorporated herein by reference.

61. Law Firm is a "debt collector' as that term is defined by 15 U.S.C. S 1692a(6).

62. Plaintiffs are consumers as that term is defined by 15 U.S.C. S 1692a(3).

63. 15 U.S.C. S 1692e provides: "A debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." In fact, Law Firm, utilizing the false assignment of mortgage has violated:

a. 15 U.S.C. s 1692e(2)(A): The character, amount and legal status of the debt for which the attached agreement is a false representation of the basis for the debt;

b. 15 U.S.C. S 1692e(2)(B): The false representation that the attached assignment of mortgage representing the basis for the amounts claimed to be due and which may be lawfully received is a violation of the FDCPA. There are false representations as Defendants knowingly have no such right contractual rights against Plaintiffs pursuant to the false assignment of mortgage;

c. 15 U.S.C.S 1692e(10): False and deceptive means to collect or to attempt to collect these debts to the extent that the cited basis for the debt is false.

64. 15 U.S.C. S 1692f, provides: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." The following conduct by Defendant evidence the violation by them of the FDCPA:

a. Defendant used and continues to use unfair and unconscionable means to collect or attempt to collect debts based on law suits with false and fraudulent documentation attached and which is being utilized to fool the consumers into believing that the false attachments are sound bases for the lawsuits.

b. 15 U.S.C. S 1692f(1): The collection of any amount ... unless such amount is expressly authorized by the underline note agreement without evidence of physically delivery of the note creating the debt or permitted by law". The debts attempted to be collected and/or have been collected are not authorized or permitted by the attached false and fraudulent documentation.

65. 15 U.S.C. S 1692k specifically authorizes a private action to recover damages sustained because of these violations.

66., 15 U.S.C. S 1692k permits class actions and civil actions.

67. The acts and actions that are in violation of the FDCPA occurred within one year of the filing of this Complaint.

68. The acts and actions by the "Debt Collector", LAW FIRM, were clearly knowing and intentional.

69. The specific acts and action by Defendants constituting the bases for this Complaint are set forth above, and are incorporated herein by reference, correlated with the attached exhibits, for the detail of these acts and actions, including, the time, date, place author and the specificity of the false communications, misrepresentations and violations of the FDCPA of which Plaintiff complains.

70. It is believed and therefore averred that the Defendants facilitated these wrongful actions for the purpose of enhancing their collections, regardless of the falsity of the attached assignment of the underline note.

71. A simple reasonable review of the basic documentation as to each account which is the subject of such lawsuits would have divulged to Defendants that the attached assignment of the

mortgage without assignment of the underline note was not applicable.

72. A reasonable investigation would have revealed to Law Firm that the assignment of mortgage was a false representation that did not cover or concern themselves with the Plaintiff or his alleged debt.

73. Plaintiff suffered damages in the form of foreclosure execution due to illegal representation regarding the initial complaint filed by the Defendants on August 22, 2014.

74. It is believed and therefore averred that Plaintiff are entitled to recover damages as a result of the violations of the FDCPA by defendants in the form of compensatory damages, including, but not limited to, restitution to the Plaintiff/ other parties, who paid Defendant, statutory damages, attorney's fees and costs and interest.

75. It is believed and therefore averred that the attachment of these false and fraudulent documents and use as evidence were knowing and intentional, therefore.

76. As such, plaintiff and the members of the Class are entitled to triple damage and/or punitive damages as permitted by statute.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to

A. Certifying the Class described, and appointing Plaintiff as representative of the Class, and the undersigned as Class counsel if counsel is presently retained;

B. Requiring that the "Debt Collectors' Defendants pay compensatory damages, restitution, statutory damages, attorney's fees and experts' fees, and punitive damages as appropriate, and

C. Enjoining the Defendants from conducting such violation activity in the future, and

D. Granting such other relief as the Court may deem appropriate,

COUNT1 - UNFAIR AND DECEPTIVE TRADE PRACTICES PLANTIFF V. DEFENDANTS

77. The averments of paragraphs one through and including seventy-six, above are incorporated herein by reference as if set forth herein at length.

76. Defendants have advertised, offered for sale or distribution its respective products and services.

77. Defendants have engaged in unfair and/or deceptive acts and trade practices, unfair methods of competition, and have practiced other unfair or deceptive acts or practices directly or indirectly adversely affecting the members of the Civil action, as described above.

78. The acts and practices include, but are not limited to:

a. Knowingly making false and misleading representations of fact, in writing;

b. Knowingly misrepresenting that the attached assignment of mortgage without of underline note govern the basis of the law suits and the legal relationship between the parties;

c. Utilizing false and misleading characterizations for the amount claims to be due, intending to is lead the consumer;

d. Taking any action that cannot legally be taken or justified;

c. Otherwise engaging in other fraudulent conduct "which creates a likelihood of confusion or of misunderstanding';

f. Engaging in any other conduct deemed to constitute unfair trade practices, unfair methods of competition, or other unfair or deceptive acts or practices.

79. The facts constituting the basis for these unfair trade practices are as set forth above, and specifically in paragraphs 31 through and including 51, and the attached exhibits. Defendants have engaged in other activity further exacerbating its participation in unfair trade practices.

80. These unfair trade practices in which Defendants have participated are all intertwined with the factors constituting misrepresentation:

a. By acts, Defendants have made representations of a material nature that Defendants knew (or should have known) were misrepresentations. These misrepresentations were made to Plaintiff and the members of the Class action.

b. These misrepresentations were made with the intent to cause Plaintiff, et al., to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, foreclosure execution, and/or paying sums of money to pay for the debt Defendants claim Plaintiff owes misrepresenting the legal basis therefore;

c. Filing law suits with the knowledge that corroborative evidence was false and only pertained to mortgage loan agreement for both Pedro R. Lopez and Piedad Lopez in 2008.

d. These misrepresentations were made with the intent to cause Plaintiff, et al., to reasonably rely to their detriment, which occurred, causing Plaintiff to suffer damage, including, but not limited to, attorney fees to contest the complaints., Because of Defendants' misrepresentations and Plaintiff's reasonable reliance thereon, Plaintiff suffered damages, including the unnecessary cost to prove the above stated action by the Defendants were in fact done as an injustice.

e. The representations made by Defendants were false, constituting misrepresentations.

3.These misrepresentations were manifested by mischaracterizations in writings.

f. Plaintiff reasonably relied upon these misrepresentations to their detriment,

h. As a result of this reliance, Plaintiff has suffered additional damage, including the payment of attorney's fees plus court cost.

   81. It is believed and therefore averred that the misrepresentations were intentional, or at least so recklessly made as to constitute intentional fraudulent statements.

   82. Defendants have, therefore, engaged in unfair trade practices to consumers. As such, Defendants are in violation of or has violated Pennsylvania Statutes 73 P.S.S 201 1, et seq., and 73 P.S. S. 2270.4(b)(5) (and 73 P.S. S 2270.5, and the consumer statutes of other states.

   83. Defendants have, therefore, engaged in misrepresentation and fraudulent misrepresentation, causing Plaintiff to suffer damages as provided by statute.

WHEREFORE, Plaintiff prays this Honorable Court grant appropriate damages, including, but not limited to compensatory damages, statutory damages, treble damages, punitive damages, attorney's fees and costs, interest and such other relief as the court may see fit.

**Respectfully submitted,**

Pedro R. Lopez, Pro se

Date: _____    BY: _____

**Pedro R. Lopez, Pro se**

On this _____ day of _____ **2017**, before me the Notary below appeared before me Pedro R. Lopez **;** to me known to be the **living man** described in and who executed the foregoing instrument and acknowledged before me that he executed the same as his **freewill act and deed.**

NOTARY SIGNATURE: _____ Date: _____ **NOTARY SEAL** :

**VALTAIR SOUZA**
ID # 2399300
NOTARY PUBLIC
STATE OF NEW JERSEY
My Commission Expires Aug. 11, 2020

Commission Expires: _____